**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| SERRALA AMERICAS, INC. a/k/a SERRALA US, INC. f/k/a SERRALA US CORPORATION, | ) ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| v. | ) C.A. No. 2024-0960-NAC |
| CURRENT LIGHTING SOLUTIONS, LLC, | ) ) ) ) |
| Defendant/Counterclaim Plaintiff. | ) ) |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

WHEREAS:

1.      On April 28, 2022, Serrala Americas, Inc. a/k/a Serrala US, Inc. f/k/a Serrala US Corporation ("Serrala") and Current Lighting Solutions LLC ("Current") entered into a Master Services Agreement ("MSA").[1]  The MSA contained an arbitration provision and established Delaware as the source of governing law and venue.[2]  The MSA also contained a fee shifting provision, which provided that "[t]he prevailing Party shall be awarded costs, expenses, administrative fees, expert witness fees and reasonable attorneys' fees."[3]

---

[1] *Serrala Ams., Inc. a/k/a Serrala US, Inc. f/k/a Serrala US Corp. v. Current Lighting Solutions, LLC*, C.A. No. 2024-0960-NAC, Docket ("Dkt.") 12, Transmittal Aff. of Joshua K. Tufts ("Tufts Aff.") Ex. 1.  I base the facts of this summary judgment ruling on the evidence submitted under affidavit with the briefing.  No material facts are in dispute for purposes of resolving the parties' cross-motions for summary judgment.

[2] *Id.* § 9.2, 9.4.

[3] *Id.* § 9.2.

2.     On April 26, 2023, Serrala initiated an arbitration proceeding against Current seeking $685,032 under theories of breach of contract, breach of the covenant of good faith and fair dealing, and quantum meruit (the "Arbitration").[4] The parties to the Arbitration engaged in limited discovery and briefed cross motions for summary judgment.[5] On April 26, 2024, the arbitrator granted Current's motion for summary judgment and denied Serrala's motion for partial summary judgment in an "Order and Partial Final Award."[6]

3.     The parties to the Arbitration filed briefs and affidavits regarding fee shifting under Section 9.2 of the MSA.[7] In reliance on the parties' submissions, on June 21, 2024, the arbitrator awarded Current Lighting $310,817.61 in costs and fees (the "Final Award").[8]

4.     Serrala filed suit in this Court on September 16, 2024, seeking "to vacate the underlying arbitration award as it relates to the award of attorney's fees because the arbitrator exceeded their authority and manifestly disregarded Delaware law."[9] On September 18, 2024, Serrala filed its operative Amended Complaint.[10] Also on

---

[4] Tufts Aff. Ex. 2.

[5] *See generally* Tufts Aff. Exs. 6-9, 13-18.

[6] Tufts Aff. Ex. 20.

[7] Tufts Aff. Exs. 21-23.

[8] Transmittal Aff. of Samuel E. Bashman ("Bashman Aff.") Ex. 3.

[9] Dkt. 1, Verified Compl. to Vacate Arb. Award ¶ 15.

[10] Dkt. 4.

September 18, 2024, Current filed its Answer and Counterclaims.[11]  On September 19, 2024, the parties agreed to file cross motions for summary judgment to resolve this action.[12]

5.      The parties filed their motions for summary judgment on September 20, 2024 (the "Motions").[13]  The Motions were fully briefed, and oral argument was held on the Motions on February 12, 2025.

NOW, THEREFORE, the Court having carefully considered the briefing and oral argument on the Motions, IT IS HEREBY ORDERED, this 28th day of February, 2025, as follows:

1.      Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."[14]  Further, "[i]t is common for this court to determine whether to vacate or confirm an arbitration award on cross-motions for summary judgment."[15]

2.      Under the Delaware Uniform Arbitration Act ("DUAA"),[16] arbitration awards are subject to vacatur when, among other things,

---

[11] Dkt. 5, Answer to Am. Verified Compl. to Vacate Arb. Award and Countercls. to Correct or Modify and Confirm Arb. Award.

[12] Dkts. 8, 9.

[13] Dkts. 11-18.

[14] Ct. Ch. R. 56(c).

[15] *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del. Ch. 1999).

[16] Both parties agree that I should proceed under the DUAA, but that the result would be the same under the Federal Arbitration Act ("FAA").  Dkt. 17, Current's Opening Br. in Supp. of Cross-Mot. for Summ. J. to Modify or Correct and Confirm Arb. Award ("Current Opening

(2) There was evident partiality by an arbitrator appointed as a neutral except where the award was by confession, or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; [or]

(3) The arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made…[17]

Serrala's primary argument for vacatur relies on case law holding that a court can vacate an arbitration award if the award is in "manifest disregard of the law," based on a showing that the decision "fl[ies] in the face of clearly established legal precedent[.]"[18]

3.      But "[i]t's a steep climb to vacate an arbitration award."[19]  My review must "begin with the presumption that the award is enforceable."[20]  "[P]recedential decisions applying both [the DUAA and FAA] require reviewing courts to give practically the highest degree of deference, short of 'untouchable,' recognized in the

---

Br.") at 8-9; Dkt. 11, Opening Br. of Pl. Countercl. Def. Serrala in Supp. of its Cross-Mot. for Summ. J. ("Serrala Opening Br.") at 9.  The Court of Chancery has further noted that "[b]ecause 10 *Del. C.* § 5714(a)(3) is modeled after the Federal Arbitration Act, . . . 'federal cases interpreting this section are most helpful.'" *Travelers Ins. Co. v. Nationwide Mut. Ins. Co.*, 886 A.2d 46, 49 (Del. Ch. 2005) (quoting *Falcon Steel Co., Inc. v. HCB Contractors, Inc.*, 1991 WL 50139, at *3 (Del. Ch. Apr. 4, 1999)).  Indeed, the parties cite decisions under both statutes.  Because there is no conflict between the DUAA and the FAA, I need not conduct any further conflict of laws analysis and look to decisions applying both statutes in my ruling.

[17] 10 *Del. C.* § 5714(a)(2)-(3).

[18] *Prospect Cap. Mgmt. L.P. v. Stratera Hldgs., LLC*, 2023 WL 3686660 at *8 (D. Del. May 26, 2023) (alterations in original) (internal citations omitted); *see also Stempien v. Marnie Props., LLC*, 2017 WL 6016568, at *1 (Del. Ch. Nov. 3, 2017).

[19] *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022).

[20] *Caputo v. Wells Fargo Advisors, LLC*, 2022 WL 1449176, at *2 (3d Cir. May 9, 2022), *cert. denied*, 143 S. Ct. 375 (2022).

4

law to an arbitrator's award."[21] In ordering vacatur, "the court must be satisfied that 'there [is] absolutely no support at all in the record justifying the arbitrator's determinations.'"[22]

4.  "An application to confirm an arbitration award and a competing application to vacate an arbitration award are 'simply opposites sides of the same FAA [or DUAA] coin.'"[23] A court must confirm an arbitration award if the award is not subject to vacatur, modification, or correction through other provisions of the DUAA.[24]

## I. Serrala's Motion for Summary Judgment.

5.  Serrala moves for summary judgment to vacate the underlying arbitrator's award of attorney's fees because the arbitrator "exceeded their authority and manifestly disregarded Delaware law."[25] Serrala cites to *Stempien v. Marnie Props., LLC*[26] for the proposition that "[f]undamentally flawed attorney's fees awards in arbitration are likewise recognized as subject to judicial scrutiny and vacatur."[27]

---

[21] *Carl Zeiss Vision, Inc. v. Refac Hldgs., Inc.*, 2017 WL 3635568, at *4 (Del. Ch. Aug. 24, 2017) (footnote omitted).

[22] *Id.* (alteration in original) (quoting *United Transp. Union Loc. 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

[23] *DoubleLine Cap. GP LLC, v. Barach*, 2024 WL 278943, at *5 (Del. Ch. Jan. 25, 2024) (quoting *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313 (3d Cir. 2021)).

[24] *DoubleLine Cap. GP LLC*, 2024 WL 278943, at *5; *see also* 10 *Del. C.* § 5713.

[25] Serrala Opening Br. at 1.

[26] 2017 WL 6016568 (Del. Ch. Nov. 3, 2017).

[27] Serrala Opening Br. at 10.

But Serrala cites to this case at the motion to dismiss stage, where the *Stempien* court concluded only that plaintiff's claims were reasonably conceivable.[28]  Later, at the summary judgment phase of the case, the *Stempien* court found that "the arbitrator did not exceed the scope of his authority or act in manifest disregard of the law when he issued the award for fees and expenses."[29]

6.      Serrala argues that the arbitrator specifically erred by issuing a fee award where:

> (i) 100% of the billing information on Current Lighting's invoices supporting their award was redacted, (ii) Current Lighting cannot be allowed to recover for its own in-house counsel's time, (iii) Current Lighting's hourly billing rates and overall amounts of time purportedly spent are unsupported, and (iv) Current Lighting's time spent on certain "investigation tasks" were facially implausible.[30]

Serrala does not argue that it needs more discovery to investigate the reasonableness of Current's fees,[31] nor does it argue for a more reasonable or reduced fee award. Rather, Serrala argues that Current's entire fee award should be vacated and

---

[28] *Stempien*, 2017 WL 6016568, at *3.

[29] *Stempien v. Marnie Props., LLC*, 2019 WL 1224557, at *3 (Del. Ch. Feb. 11, 2019).

[30] Serrala Opening Br. at 1.  Serrala also argues summarily that the arbitrator "deprived Serrala of the ability to obtain and present all pertinent evidence … [such] that a mutual, final, and definite award was not ultimately made on the merits of Serrala's $685,032 breach of contract case." *Id*. at 8; *see also* Dkt. 28, Ans. Br. of Pl. Countercl. Def. Serrala at 11.  But Serrala does not move to vacate the arbitrator's decision on the merits.  Further, Serrala did not sufficiently brief this issue and "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . .  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work. . . .  Judges are not expected to be mindreaders." *Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242 n.12 (Del. 2004) (quoting *Willhauck v. Halpin*, 953 F.2d 689, 700 (1st Cir. 1991)).

[31] *See* Dkt. 36, Tr. of February 12, 2025 Oral Arg. ("Tr.") at 38.

"modif[ied] . . . to provide for recovery of only the amounts that Current Lighting paid in AAA administrative fees."[32]  This amount was approximately $8,000.[33]

7.     Serrala's argument regarding allegedly redacted invoices can best be summarized as an argument that the arbitrator lacked a sufficient evidentiary basis from which to derive a fee award.[34]  But Serrala's counsel stated at oral argument that this Court can only overturn the arbitrator's decision if it was arbitrary and capricious, which Serrala's counsel asserted was equivalent to manifest disregard of the law.[35]  Here, far from having no evidentiary basis, Current provided the arbitrator with a monthly summary table of hours, separated out by billing attorney and correlated with the relevant phase of the case.[36]  The fee award was also supported by three declarations, under penalty of perjury, from Current's outside counsel, in-

---

[32]Serrala Opening Br. at 23.

[33] Bashman Aff. Ex. 3.

[34] From my review of the record it does not appear that Current actually submitted redacted invoices of counsel's time.  Rather, Current's counsel submitted its own vendor invoices, redacted to show only entries reflecting costs relating to this matter. Tufts Aff. Ex. 21 at Ex. A at Ex. 2.  Regardless, the content of the redactions does not change my analysis.

[35] Tr. at 38-41.

[36] Tufts Aff. Ex. 21 at Ex. A at Ex. 1.  Serrala also challenges the fee award as it relates to certain phases of the case, such as Current's unsuccessful motion to compel.  Serrala Opening Br. at 14.  This argument is contradicted by the broad language of the MSA, which provides that "[t]he prevailing Party shall be awarded costs, expenses, administrative fees, expert witness fees and reasonable attorneys' fees."  Tufts Aff. Ex. 1 § 9.2.  Because Current prevailed on all of the ultimate issues in the Arbitration, I see no basis under the MSA to reduce Current's fee award based on unsuccessful interim discovery motions. *See West Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009) ("Absent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner.").

7

house counsel and CIO.[37] Although I might have required a more detailed evidentiary basis had this matter come before me in the first instance, given that the arbitrator had an evidentiary record before him on which he could reasonably have relied I cannot say that his decision was arbitrary, capricious, or in manifest disregard of Delaware law.[38]

8. Serrala next argues that Current's hourly billing rates and overall amounts of time are unsupported. As I previously discussed, the arbitrator did not manifestly disregard Delaware law because there was evidence in the record, such as Current's affidavits, on which he could reasonably have relied to support the amount of time billed. The sworn declaration of Mr. Angileri, Current's outside counsel, similarly supports the actual rates billed by Current's outside counsel. According to this sworn declaration, Current's outside counsel charged between $480 and $660 an hour for shareholders working on this matter.[39] In support of these rates Current submitted a survey of intellectual property attorney rates in Philadelphia, which Serrala argues is inappropriate. Although a survey of Philadelphia law firms might not be the best evidence for appropriate billing rates in Delaware, I cannot conclude

---

[37] Tufts Aff. Ex. 21 at Exs. A, B, C.

[38] Serrala notes that that arbitrator awarded Current its costs and fees "without explanation," though it does not argue that the Final Award is subject to vacatur on that basis. Serrala Opening Br. at 7. Even so, I note that there is, for example, federal case law holding that an arbitrator is not required to provide an explanation for their decisions. *See, e.g., Interlink Gp. Corp. v. CWT Farms Int'l, Inc.*, 2009 WL 10670688, at *2 (N.D. Ga. Oct. 5, 2009) ("Arbitrators, however, are not required to explain an arbitration award and their silence cannot be used to infer a grounds for vacating the award.").

[39] Tufts Aff. Ex. 21 at Ex. A at Ex. 1.

the arbitrator would have manifestly disregarded Delaware law by relying on the survey. Regardless, I also note that the rates charged in this matter are well below rates approved as reasonable under Delaware precedent.[40] In today's legal market, the notion that Serrala now attempts to challenge approval of the rates here as in manifest disregard of law seems frankly reflective of Serrala's overall failure to grapple with the very high burden associated with obtaining vacatur of an arbitrator's decision.

9. Serrala lastly objects to the inclusion of time expended by Current's in-house counsel and for its internal investigation tasks. But the fee shifting provision of the MSA includes very broad language providing that "[t]he prevailing Party shall be awarded costs, expenses, administrative fees, expert witness fees and reasonable attorneys' fees."[41] The arbitrator did not act in manifest disregard of the law by finding that these costs and expenses fell under the broad language of the MSA.[42]

---

[40] *See, e.g.*, *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2021 WL 5174088, at \*5-6 (Del. Ch. Nov. 8, 2021) (finding a partner's hourly rate of $1,645 to be reasonable); *In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at \*23-24, 36 (Del. Ch. Apr. 30, 2021) (finding partner rates ranging from $1,225 to $1,775 and associate rates of $695 to $1,120 to be reasonable), *aff'd sub nom.*, *TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022).

[41] Tufts Aff. Ex. 1 § 9.2

[42] Both parties cite to case law in support of their respective arguments that in-house counsel's time either is or is not the proper subject of fee shifting under Delaware law. But Serrala does not disagree with the concept that in-house counsel's time could be subject to fee shifting under certain circumstances. Instead, Serrala argues that the arbitrator was incorrect in concluding that in-house counsel's time was subject to fee shifting based on the specific circumstances of this case. Tr. at 11-12. "For a court to find that an arbitrator showed manifest disregard of the law, 'a court must find that the arbitrator consciously chose to ignore a legal principle, or contract term, that is so clear that it is not subject to reasonable debate.'" *Stempien*, 2017 WL 6016568, at \*1 (quoting *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 747 (Del. 2014)). Because Serrala concedes that in-house counsel's time could, as a

9

And the record included Current's sworn declarations, provided not only by outside counsel but also in-house counsel and Current's CIO, in support of the amounts incurred by Current's in-house counsel and for its internal investigation tasks.

10. Accordingly, Serrala has failed to meet the frankly incredibly high burden of showing that the arbitrator exceeded his powers or acted in manifest disregard of Delaware law.

## II. Current's Motion for Summary Judgment.

11. Current cross moves for summary judgment to confirm the arbitration award, as modified or corrected to reflect Current's proper corporate name.[43] Because I have denied Serrala's motion to vacate the arbitration award, I must grant Current's motion to confirm it.[44]

12. Current's request to modify the arbitration award to reflect its proper corporate name will not substantively change the arbitrator's ruling and is not contested in the parties' briefing. Accordingly, Current's motion to modify the arbitration award to reflect its proper corporate name must also be granted.[45]

---

question of applicable law, have been subject to fee shifting under the MSA, I cannot conclude that Serrala meets its high burden to vacate the arbitration award on these grounds.

[43] Current Opening Br. at 2.

[44] *See DoubleLine Cap. GP LLC*, 2024 WL 278943, at *5.

[45] *See, e.g., Gray v. Fidelity Investment*, 2021 WL 5826368, at *2 (N.D.N.Y. Dec. 8, 2021) ("[A] misnamed defendant seems to be precisely the type of imperfection in form that would allow for a modification of an arbitration award.").

13.    Finally, Current moves for recovery of its fees in this litigation, again under the prevailing party language of MSA § 9.2.[46]  Serrala does not address this specific argument in its briefing.  Based on the broad language of the MSA, Current is entitled to its reasonable attorneys' fees as the prevailing party in this action. Counsel for Current is ordered to submit an affidavit in support of its reasonable fees in compliance with Court of Chancery Rule 88.

*/s/ Nathan A. Cook*
Vice Chancellor Nathan A. Cook

---

[46] Tufts Aff. Ex. 1 § 9.2.  In addition to the parties' agreement to arbitrate any disputes, the MSA provides that "either Party may enter judgment on an award in any court of competent jurisdiction."  *Id*.